UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

NANCY SIEGEL     PLAINTIFF

V.     NO. 3:08CV-00429-S

KENTUCKY FARM BUREAU
MUTUAL INSURANCE COMPANY     INTERVENOR PLAINTIFF

V.

FISHER & PAYKEL APPLIANCES
HOLDINGS LTD., et al.     DEFENDANTS/THIRD-PARTY PLAINTIFFS

## MEMORANDUM OPINION

Fisher & Paykel Appliances Holdings Ltd. and Dynamic Cooking Systems, Inc. have filed a motion for summary judgment of plaintiffs' claims against them. For the reasons stated more thoroughly below, the court will deny the motion in large part.[1]

**I.**

The plaintiff, Nancy Siegel, was injured while she was using a propane gas range manufactured by Dynamic Cooking Systems, Inc. ("DCS"). Discovery later revealed that one of the component parts of Ms. Siegel's range was a regulator that was manufactured not by DCS, but by Burner Systems, Inc. ("BSI"). Although DCS filed a third party claim for indemnity against BSI, neither Ms. Siegel, nor her insurance company (as an intervening plaintiff) amended their pleadings to assert claims directly against BSI.

---

[1] The court will, however, grant that part of the motion which pertains to whether Fisher & Paykel Appliances Holdings Ltd. is a proper defendant in this case. Plaintiff and intervenor plaintiff have not disputed Fisher & Paykel's assertion that summary judgment of the claims against Fisher & Paykel is proper because there exists no evidence that Fisher & Paykel is anything more than an New Zealand affiliate of Dynamic Cooking Systems and, as such, neither manufactured nor sold the range at issue.

The regulator in Ms. Siegel's range was extensively damaged during the accident that caused her injuries. Nevertheless, there is no dispute among the parties that a leak in that regulator caused the explosion and fire. The parties agree that there was no defect in the *design* of the gas regulator, but there remains much dispute as to whether the leak was caused by a manufacturing defect in the regulator itself, or by a design or manufacturing defect with respect to the range itself that caused the regulator to leak.

As is typical practice in product liability actions, the parties retained experts to help them determine the cause of the accident. DCS has identified Mark Mulcahy of SEA Ltd. Both Ms. Siegel and Kentucky Farm Bureau have identified Miranda Hewlett and David Riggs of Donan Engineering, which was hired by Ms. Siegel's insurer, intervening plaintiff Kentucky Farm Bureau, to investigate the accident. Burner Systems retained and identified Thomas Crane of Crane Engineering.

All of the experts agreed that the probable source of the leak that caused the explosion was the Burner Systems regulator, but none of the experts stated unequivocally, in a report or deposition testimony, that the *probable* cause of the leak in the regulator was a manufacturing defect with respect to the regulator itself (as opposed to the other possible causes such as placement of the regulator in an area of the range that produced temperatures higher than the regulator's specified range). Consequently, when BSI filed a motion for summary judgment of DCS's indemnity claim, the court granted that motion and ruled that DCS had not met its burden under the Kentucky law of indemnity of establishing that BSI liability was greater than that of DCS.

In so doing, the court made some collateral determinations that DCS now points to in support of its own motion for summary judgment. The first was the court's determination that

DCS could not rely solely on circumstantial evidence to defeat BSI's motion for summary judgment.

> DCS may use circumstantial evidence, but it its evidence must "support a reasonable inference that a manufacturing defect in the regulator was the 'probable' cause of the accident as distinguished from a 'possible' cause among other possibilities." *Greene v. B.F. Goodrich Avionics Systems, Inc.*, 409 F.3d 784, 793 (6th Cir. 2005)(citing *Midwestern V.W. Corp. v Ringley*, 503 S.W.2d 745, 747 (Ky. 1973), and applying Kentucky law generally). Kentucky common law and applicable Sixth Circuit case law are clear: the finder of fact cannot be asked to speculate, suppose, or surmise that there was a manufacturing defect. *Id.*

Mem. Op. at 6 (docket no. 103). The second determination in the indemnity summary judgment ruling was that Kentucky law required expert testimony to support DCS's claim that a manufacturing defect in the regulator was more probably the cause of the accident than a defect in the design or manufacture of the range.

> The regulator in question was a highly technical piece of equipment, so expert testimony is required not only to explain the various possible explanations for its failure, including manufacturing defect, but also to opine about the *probable* cause of the accident. *See, e.g., Gray v. General Motors Corp.*, 312 F.3d 240, 242 (6th Cir. 2002))(requiring expert testimony regarding alleged defects in a seatbelt mechanism, and noting "Gray's shortcoming in this litigation is simply a failure to offer the proof necessary to establish the claims asserted ... the plaintiff's expert was unable to identify any "probable" defect in the seatbelt mechanism that caused the injury, as is required by Kentucky products liability law"); *see also Thomas v. Manchester Tank & Equip. Corp.,* 2007 WL 3673118, *3 (W.D. Ky. 2005)(Heyburn, J.)(requiring expert testimony in support of a product liability claim involving a heat regulator). "The proof in this case establishes no more than possibilities or combinations of possibilities," with no expert able to pierce the "veil of speculation" that Burner Systems's regulator was defectively manufactured. *Texas v. Standard,* 536 S.W.2d 136, 138 (Ky. 1976)(internal citation omitted).

Mem. Op. at 8-9 (docket no. 103). DCS now asserts that these conclusions are the law of the

case and mandate summary judgment in its favor with respect to plaintiff's direct claim against it as the manufacturer of the range. DCS is partially correct.

**II.**

The conclusions are the law of the case, but the court reached the conclusions noted above in the context of BSI's motion for summary judgment because the central legal issue in that motion was different than the one central to this motion. To prevail on a claim for indemnity, DCS was required to establish that another's fault (*i.e.,* BSI's) was greater than its own. More specifically, because this is a product liability case, DCS was required to establish that the defective manufacture of BSI's component part[2] was more probably the cause of the accident than a defect in the design or manufacture of DCS's range itself.

DCS could not rely on circumstantial evidence that BSI's fault was greater than its own, because it had not eliminated the possible explanations for the regulator's failure that could be attributed to DCS's fault (*e.g.,* that the range itself generated internal temperatures higher than those specified for the proper functioning of the regulator). And, because both the range and its component parts were complex pieces of equipment, expert analysis and testimony was necessary to help the jury understand why one alleged defect was more likely the cause of the accident than any other. Although many jurors use ranges, few understand the precise mechanisms by which ranges and their component parts work, or the myriad technical ways in which they can fail. Where, as here, DCS's own expert candidly admitted that higher than anticipated temperatures in the area surrounding the regulator could have caused it to fail, a determination that BSI's liability was greater than DCS's would have required the jury to speculate about which of the proffered defects was, in fact, the one that caused the regulator to

---

[2]There exists no evidence that the regulator's design was defective.

-4-

leak.

The analysis is subtly but significantly different, however, when the court is asked to determine whether DCS is entitled to summary judgment of plaintiffs' claims. As Kentucky Farm Bureau correctly notes, the court is no longer evaluating the evidence with respect to the burden of proof required for an indemnity claim. To withstand DCS's request for summary judgment of her claims, the plaintiff is not required to establish precisely *why* the range failed, but *whether* it did. Put another way, to withstand DCS's motion for summary judgment, Ms. Siegel, unlike DCS with respect to BSI's motion for summary judgment, does not have to establish which of the several possible explanations for the range's failure probably is the correct one. Instead, she simply must show that there exist material issues of fact as to whether the accident was caused by a problem intrinsic to the range, as opposed to some external factor. This she has done.

The regulator leaked. That conclusion appears uncontroverted, yet no evidence conclusively establishes that the reason for the leak lies exclusively with BSI, the manufacturer of the regulator. Indeed, one of the proffered explanations for the cause of the leak is a design defect on the part of DCS with respect to the placement of the regulator within the range. Granted, the original and principal source of that explanation was Thomas Crane, BSI's expert, whom this court has excluded from testifying in this action, and whose opinions this court has precluded plaintiff from adopting wholesale. However, the court's exclusion of Mr. Crane's testimony under Fed. R. Evid. 702 does not mean that DCS's potential liability under either of her claimed theories (*i.e.,* strict product liability and negligence) is not triable. Plaintiff has a small evidentiary needle to thread, but she has the right to attempt it nonetheless.

Whether plaintiff will, at trial, be able to piece together sufficient testimony and evidence from the remaining expert or lay witnesses to convince a jury that she is entitled to recover from DCS under a theory of either design or manufacturing defect remains to be seen, but there appears to be enough that the jury potentially could consider, if it were properly elicited during the examinations of the remaining witnesses. Similarly, there appears to be enough available from Mr. Mulcahy's report and testimony to call into question whether a factor external to the range may have caused the regulator to fail. The court is mindful of *Greene v. B.F. Goodrich Avionics Systems, Inc.*, 409 F.3d 784 (6th Cir. 2006), and will promptly rule on a motion for directed verdict, if the plaintiffs cannot establish that a design or manufacturing defect on the part of DCS is the probable cause of her injuries; in the meantime, however, she may present her case to the jury to the extent the evidence permits.

## III.

For the reasons stated herein, the court will enter a separate order granting in part and denying in part the defendants' motion for summary judgment.

DATE:

cc:     counsel of record